E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JAMES C. HUGHES (Cal. Bar No. 263878)
RICHARD E. ROBINSON (Cal. Bar No. 090840)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2579; 894-0713
    Facsimile: (213) 894-6269
    E-mail:   james.hughes2@usdoj.gov
            richard.robinson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>LIJUAN CHEN,<br><br>       Defendant. | No. CR 23-302-JLS-2<br><br>PLEA AGREEMENT FOR DEFENDANT<br>LIJUAN CHEN |

    1.   This constitutes the plea agreement between Lijuan Chen ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

### DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one and five of the indictment in United States v. Lijuan Chen, CR No. 23-302-JLS, which charges defendant with violations of 18 U.S.C. § 371 and 18 U.S.C. § 501.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.    Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a

1  guilty plea, deliver the signed and dated statement, along with all

2  of the documents requested therein, to the USAO by either email at

3  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

4  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

5  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

6  criminal debt shall be assessed based on the completed Financial

7  Disclosure Statement and all required supporting documents, as well

8  as other relevant information relating to ability to pay.

9       j.   Authorize the USAO to obtain a credit report upon

10 returning a signed copy of this plea agreement.

11      k.   Consent to the USAO inspecting and copying all of

12 defendant's financial documents and financial information held by the

13 United States Probation and Pretrial Services Office.

14      l.   Defendant further agrees:

15           i.   To forfeit, on behalf of defendant and any entity

16 in which defendant has held an ownership interest or has served as an

17 officer, director, manager, partner, trustee, or other representative

18 (which entities are collectively referred to herein as the "Defendant

19 Entities" and include, without limitation, First Dragon Investment

20 Inc., ZHC Logistics Inc., First Monkey Group Inc., Third Monkey

21 International Inc., Second Monkey Investment Inc., Fourth Monkey

22 International Inc., Fifth Monkey Investment Inc.), to the extent

23 Defendant has the ability to do so on behalf of Defendant Entities,

24 all right, title, and interest in and to any and all monies,

25 properties, and/or assets of any kind, derived from or acquired as a

26 result of, or used to facilitate the commission of, or involved in

27 the illegal activity to which defendant is pleading guilty

28

(collectively the "Forfeitable Property"), specifically including, but not limited to, the following:

  ii. All funds on deposit in an East West Bank Certificate of Deposit account ending in 9982, held in the name of First Dragon Investment Inc., and seized pursuant to a federal seizure warrant executed on or about June 30, 2023;

  iii. All funds on deposit in an East West Bank Certificate of Deposit account ending in 3634, held in the name of ZHC Logistics Inc., and seized pursuant to a federal seizure warrant executed on or about June 30, 2023;

  iii. All funds on deposit in an East West Bank Certificate of Deposit account ending in 6941, held in the name of ZHC Logistics Inc., and seized pursuant to a federal seizure warrant executed on or about June 30, 2023;

  iv. All funds on deposit in an East West Bank Certificate of Deposit account ending in 2997, held in the name of First Dragon Investment Inc., and seized pursuant to a federal seizure warrant executed on or about June 30, 2023;

  v. Real property commonly known as 1357 Bellavista Drive, Walnut, California 91789 (APN 8762-022-022);

  vii. Real property commonly known as 14244 Willamette Ave., Chino, California 91710 (APN 1026-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);

  viii. Real property commonly known as 6575 Mogano Dr., Chino, California 91710 (APN 1051-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);

  viii. Real property commonly known as 11080 Garvey Ave., South El Monte, California 91733 (APN 8105-001-106);

  ix. Real property commonly known as 3207 Edgewood Rd., West Covina, California 91791 (APN 8480-002-099);

4

1            x.   Real property commonly known as 35 Weiss Dr.,

2 South El Monte, California 91733 (APN 8119-008-090);

3           xi.  Real property commonly known as 15335 Lotus

4 Circle, Chino Hills, California 91709 (APN 1028-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);

5           xii.  Real property commonly known as 16140 Sereno Ln,

6 Chino Hills, California 91709 (APN 1028-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);

7           xiii. Real property commonly known as 6968 Silverado

8 St., Chino, California 91710 (APN 1053-061-49-0-000);

9           xiv.  Real property commonly known as 1205 Porto

10 Grande, Unit 2, Diamond Bar, California 91765 (APN 8293-046-013);

11           xv.  Real property commonly known as 15902 Ellington

12 Way, Chino Hills, California 91709 (APN 1028-661-28-0-000);

13           xvi. Real property commonly known as 14409 Figueroa

14 Ln, Chino, California 91710 (APN 1053-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); and

15           xvii. Insurance policies held with New York Life

16 Insurance Company with the policy numbers ending #39844, #60938,

17 #63430, #35643, #35644, and #55644.

18       m.   To the Court's entry of an order of forfeiture at or

19 before sentencing with respect to the Forfeitable Property.

20       n.   That the Preliminary Order of Forfeiture shall become

21 final as to the defendant upon entry.

22       o.   To take whatever steps are necessary to pass to the

23 United States clear title to the Forfeitable Property, including,

24 without limitation, the execution of a consent decree of forfeiture

25 and the completing of any other legal documents required for the

26 transfer of title to the United States.

27       p.   Not to contest any administrative forfeiture

28 proceedings or civil judicial proceedings commenced against the

5

Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of herself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right she may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

q.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

r.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

s.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

t.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

u.   That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

v.   That with respect to any criminal forfeiture ordered as a result of this agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to

the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

3.   Defendant further agrees to cooperate fully with the USAO, the United States Postal Inspection Service, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4.   For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated October 26, 2023 (the "Letter Agreement"); and (2) "Plea Information"

1   shall mean any statements made by defendant, under oath, at the

2   guilty plea hearing and the agreed to factual basis statement in this

3   agreement.

THE USAO'S OBLIGATIONS

5       5.   The USAO agrees to:

6           a.   Not contest facts agreed to in this agreement.

7           b.   Abide by all agreements regarding sentencing contained

8   in this agreement.

9           c.   At the time of sentencing, move to dismiss the

10   remaining counts of the indictment as against defendant.   Defendant

11   agrees, however, that at the time of sentencing the Court may

12   consider any dismissed charges in determining the applicable

13   Sentencing Guidelines range, the propriety and extent of any

14   departure from that range, and the sentence to be imposed.

15          d.   At the time of sentencing, provided that defendant

16   demonstrates an acceptance of responsibility for the offenses up to

17   and including the time of sentencing, recommend a two-level reduction

18   in the applicable Sentencing Guidelines offense level, pursuant to

19   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

20   additional one-level reduction if available under that section.

21      6.   The USAO further agrees:

22          a.   Not to offer as evidence in its case-in-chief in the

23   above-captioned case or any other criminal prosecution that may be

24   brought against defendant by the USAO, or in connection with any

25   sentencing proceeding in any criminal case that may be brought

26   against defendant by the USAO, any Cooperation Information.

27   Defendant agrees, however, that the USAO may use both Cooperation

28   Information and Plea Information: (1) to obtain and pursue leads to

other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

      b.   Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed. Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

      c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

      d.   If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range

1    below that otherwise dictated by the sentencing guidelines, and to

2    recommend a term of imprisonment within this reduced range.

3              e.    Not further criminally prosecute defendant for

4    violations of 18 U.S.C. § 501 arising out of defendant's conduct

5    described in the agreed-to factual basis set forth in Attachment A.

6    Defendant understands that the USAO is free to criminally prosecute

7    defendant for any unlawful conduct that occurs after the date of this

8    agreement.  Defendant agrees that at the time of sentencing the Court

9    may consider the uncharged conduct in determining the applicable

10   Sentencing Guidelines range, the propriety and extent of any

11   departure from that range, and the sentence to be imposed after

12   consideration of the Sentencing Guidelines and all other relevant

13   factors under 18 U.S.C. § 3553(a).

14             DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

15        7.   Defendant understands the following:

16             a.    Any knowingly false or misleading statement by

17   defendant will subject defendant to prosecution for false statement,

18   obstruction of justice, and perjury and will constitute a breach by

19   defendant of this agreement.

20             b.    Nothing in this agreement requires the USAO or any

21   other prosecuting, enforcement, administrative, or regulatory

22   authority to accept any cooperation or assistance that defendant may

23   offer, or to use it in any particular way.

24             c.    Defendant cannot withdraw defendant's guilty pleas if

25   the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

26   reduced guideline range or if the USAO makes such a motion and the

27   Court does not grant it or if the Court grants such a USAO motion but

28   elects to sentence above the reduced range.

1        d.   At this time the USAO makes no agreement or

2   representation as to whether any cooperation that defendant has

3   provided or intends to provide constitutes or will constitute

4   substantial assistance.  The decision whether defendant has provided

5   substantial assistance will rest solely within the exclusive judgment

6   of the USAO.

7        e.   The USAO's determination whether defendant has

8   provided substantial assistance will not depend in any way on whether

9   the government prevails at any trial or court hearing in which

10   defendant testifies or in which the government otherwise presents

11   information resulting from defendant's cooperation.

12   <u>NATURE OF THE OFFENSES</u>

13   8.   Defendant understands that for defendant to be guilty of

14   the crime charged in count one, that is, conspiracy to defraud the

15   United States, in violation of Title 18, United States Code, Section

16   371, the following must be true:

17        a.   There was an agreement between two or more persons to

18   defraud the United States by obstructing the lawful functions of the

19   United States Postal Service by deceitful or dishonest means;

20        b.   Defendant became aware of the conspiracy knowing of at

21   least one of its objects and intending to help accomplish it; and

22        c.   One of the members of the conspiracy performed at

23   least one overt act for the purpose of carrying out the conspiracy.

24   9.   Defendant understands that for defendant to be guilty of

25   the crime charged in count five, that is, use of counterfeit postage,

26   in violation of Title 18, United States Code, Section 501, the

27   following must be true:

28

1          a.   Defendant made, printed, knowingly used or sold, or

2   possessed with the intent to use or sell, forged or counterfeit

3   postage meter stamps; and

4          b.   At the time defendant made, printed, knowingly used or

5   sold, or possessed with the intent to use or sell such postage meter

6   stamps, defendant knew the postage meter stamps were forged or

7   counterfeit.

PENALTIES AND RESTITUTION

9       10.  Defendant understands that the statutory maximum sentence

10  that the Court can impose for a violation of Title 18, United States

11  Code, Section 371, is: 5 years' imprisonment; a 3-year period of

12  supervised release; a fine of $250,000 or twice the gross gain or

13  gross loss resulting from the offense, whichever is greatest; and a

14  mandatory special assessment of $100.  Defendant understands that the

15  statutory maximum sentence that the Court can impose for a violation

16  of Title 18, United States Code, Section 501, is: 5 years'

17  imprisonment; a 3-year period of supervised release; a fine of

18  $250,000 or twice the gross gain or gross loss resulting from the

19  offense, whichever is greatest; and a mandatory special assessment of

20  $100.

21      11.  Defendant understands, therefore, that the total maximum

22  sentence for all offenses to which defendant is pleading guilty is:

23  10 years imprisonment; a 3-year period of supervised release; a fine

24  of $500,000 or twice the gross gain or gross loss resulting from the

25  offenses, whichever is greatest; and a mandatory special assessment

26  of $200.

27      12.  Defendant understands that defendant will be required to

28  pay full restitution to the victim of the offenses to which defendant

12

is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $158,288,991, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

13.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

13

the right to hold office, and the right to serve on a jury.
Defendant understands that she is pleading guilty to a felony and
that it is a federal crime for a convicted felon to possess a firearm
or ammunition.  Defendant understands that the convictions in this
case may also subject defendant to various other collateral
consequences, including but not limited to revocation of probation,
parole, or supervised release in another case and suspension or
revocation of a professional license.  Defendant understands that
unanticipated collateral consequences will not serve as grounds to
withdraw defendant's guilty pleas.

15.  Defendant and her counsel have discussed the fact that, and
defendant understands that, if defendant is not a United States
citizen, the convictions in this case makes it practically inevitable
and a virtual certainty that defendant will be removed or deported
from the United States.  Defendant may also be denied United States
citizenship and admission to the United States in the future.
Defendant understands that while there may be arguments that
defendant can raise in immigration proceedings to avoid or delay
removal, removal is presumptively mandatory and a virtual certainty
in this case.  Defendant further understands that removal and
immigration consequences are the subject of a separate proceeding and
that no one, including her attorney or the Court, can predict to an
absolute certainty the effect of her convictions on her immigration
status.  Defendant nevertheless affirms that she wants to plead
guilty regardless of any immigration consequences that her pleas may
entail, even if the consequence is automatic removal from the United
States.

14

FACTUAL BASIS

16.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in the attachment marked as Attachment A, and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

17.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

18.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:          9          [U.S.S.G. § 2B5.1]

Specific Offense
Characteristics:

| | | |
|---|---|---|
| Loss Amount Between $150 Million - $250 Million | 26 | [U.S.S.G. §§ 2B5.1(b)(1)] |
| Manufacture of Counterfeit Government Obligations: | 2 | [U.S.S.G. § 2B5.1(b)(2)] |
| Part of Offense Committed Outside United States | 2 | [U.S.S.G. § 2B5.1(b)(5)] |

Role in the Offense:

| | | |
|---|---|---|
| Organizer or Manager in Criminal Activity | 2 | [U.S.S.G. § 3B1.1] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

19.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

                    WAIVER OF CONSTITUTIONAL RIGHTS

21.  Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel – and if necessary have the Court appoint counsel – at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

22.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

23.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 120 months defendant gives up the right to appeal all of the following:

17

(a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; e) the amount and terms of any restitution order, provided it requires payment of no more than $158,288,991; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

25.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above the USAO gives up its right to appeal any portion of the sentence, with the

1  exception that the USAO reserves the right to appeal the following:

2  (a) the amount of restitution ordered if that amount is less than

3  $158,288,991.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

5      26.  Defendant agrees that if, after entering guilty pleas

6  pursuant to this agreement, defendant seeks to withdraw and succeeds

7  in withdrawing defendant's guilty pleas on any basis other than a

8  claim and finding that entry into this plea agreement was

9  involuntary, then (a) the USAO will be relieved of all of its

10  obligations under this agreement, including in particular its

11  obligations regarding the use of Cooperation Information; (b) in any

12  investigation, criminal prosecution, or civil, administrative, or

13  regulatory action, defendant agrees that any Cooperation Information

14  and any evidence derived from any Cooperation Information shall be

15  admissible against defendant, and defendant will not assert, and

16  hereby waives and gives up, any claim under the United States

17  Constitution, any statute, or any federal rule, that any Cooperation

18  Information or any evidence derived from any Cooperation Information

19  should be suppressed or is inadmissible; and (c) should the USAO

20  choose to pursue any charge or any civil, administrative, or

21  regulatory action that was either dismissed or not filed as a result

22  of this agreement, then (i) any applicable statute of limitations

23  will be tolled between the date of defendant's signing of this

24  agreement and the filing commencing any such action; and

25  (ii) defendant waives and gives up all defenses based on the statute

26  of limitations, any claim of pre-indictment delay, or any speedy

27  trial claim with respect to any such action, except to the extent

28

1 that such defenses existed as of the date of defendant's signing this
2 agreement.

3     27.  Defendant agrees that if any count of conviction is
4 vacated, reversed, or set aside, the USAO may: (a) ask the Court to
5 resentence defendant on any remaining count of conviction, with both
6 the USAO and defendant being released from any stipulations regarding
7 sentencing contained in this agreement, (b) ask the Court to void the
8 entire plea agreement and vacate defendant's guilty pleas on any
9 remaining count of conviction, with both the USAO and defendant being
10 released from all their obligations under this agreement, or
11 (c) leave defendant's remaining conviction, sentence, and plea
12 agreement intact.  Defendant agrees that the choice among these three
13 options rests in the exclusive discretion of the USAO.

14                    EFFECTIVE DATE OF AGREEMENT

15     28.  This agreement is effective upon signature and execution of
16 all required certifications by defendant, defendant's counsel, and an
17 Assistant United States Attorney.

18                       BREACH OF AGREEMENT

19     29.  Defendant agrees that if defendant, at any time after the
20 the effective date of this agreement, knowingly violates or fails to
21 perform any of defendant's obligations under this agreement ("a
22 breach"), the USAO may declare this agreement breached.  For example,
23 if defendant knowingly, in an interview, before a grand jury, or at
24 trial, falsely accuses another person of criminal conduct or falsely
25 minimizes defendant's own role, or the role of another, in criminal
26 conduct, defendant will have breached this agreement.  All of
27 defendant's obligations are material, a single breach of this
28 agreement is sufficient for the USAO to declare a breach, and

defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

    a.   If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

    b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated to dismiss pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

    c.   The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

    d.   In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as

21

1  well as any evidence derived from any Cooperation Information or any

2  Plea Information, shall be admissible against defendant, and

3  defendant will not assert, and hereby waives and gives up, any claim

4  under the United States Constitution, any statute, Rule 410 of the

5  Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

6  Criminal Procedure, or any other federal rule, that any Cooperation

7  Information, any Plea Information, or any evidence derived from any

8  Cooperation Information or any Plea Information should be suppressed

9  or is inadmissible.

10   30.  Following the Court's finding of a knowing breach of this

11  agreement by defendant, should the USAO choose to pursue any charge

12  that was either dismissed or not filed as a result of this agreement,

13  then:

14   a.  Defendant agrees that any applicable statute of

15  limitations is tolled between the date of defendant's signing of this

16  agreement and the filing commencing any such action.

17   b.  Defendant waives and gives up all defenses based on

18  the statute of limitations, any claim of pre-indictment delay, or any

19  speedy trial claim with respect to any such action, except to the

20  extent that such defenses existed as of the date of defendant's

21  signing this agreement.

22   COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

23   OFFICE NOT PARTIES

24   31.  Defendant understands that the Court and the United States

25  Probation and Pretrial Services Office are not parties to this

26  agreement and need not accept any of the USAO's sentencing

27  recommendations or the parties' agreements to facts or sentencing

28  factors.

22

32.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

33.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

34.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

35.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____          April 7, 2024
JAMES C. HUGHES                             Date
RICHARD E. ROBINSON
Assistant United States Attorneys

_____          April 2, 2024
LIJUAN CHEN                                 Date
Defendant

_____          4/2/2024
ELIOT KRIEGER                               Date
Attorney for Defendant Lijuan Chen

24

## CERTIFICATION OF DEFENDANT

This agreement has been read to me in Mandarin Chinese, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          April 2, 2024
LIJUAN CHEN                               Date
Defendant

CERTIFICATION OF INTERPRETER

I, Yanyan Liu, am fluent in the written and spoken English and Mandarin Chinese languages. I accurately translated this entire agreement, including Attachment A, from English into Mandarin Chinese to defendant Lijuan Chen on this date.

_____        April 2, 2024
INTERPRETER                             Date


CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Lijuan Chen's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____        4/2/2024
ELIOT KRIEGER                           Date
Attorney for Defendant Lijuan Chen

ATTACHMENT A TO PLEA AGREEMENT

STATEMENT OF FACTS

Defendant LIJUAN CHEN ("defendant") represents and admits that the following facts are true:

**A.    BACKGROUND FACTS**

The United States Postal Service and Postage Systems

1.    The United States Postal Service ("USPS"), an agency of the United States, provided customers a variety of services in connection with the delivery of mail, including letters and parcels.  All pieces of mail accepted for delivery by USPS were required to bear appropriate and valid postage purchased by the sender.  Proof of payment of the required postage could be established in various ways including by affixing stamps, postage meter imprints, PC postage products and shipping labels purchased online and printed by the customer.

2.    Postage evidencing systems were devices that allowed USPS customers to obtain and affix postage meter stamps to mail pieces being presented to the USPS for delivery.  One form of postage evidencing system that USPS customers could use was PC Postage software.  PC Postage was a USPS-approved third-party vendor software that mailers could use to pay for and print their postage.

3.    Postage labels printed from postage evidencing systems included two types of information relevant to the amount of postage: (1) human-readable postage information detailing the type of postage product (e.g., First Class Mail), the date the postage was purchased, the originating zip code, the weight of the package, and the shipping distance; and (2) information-based indicia ("IBI"), which were digital indicia that include coded information and a USPS approved

27

1 symbol with a digital signature.  Among other things, the IBI

2 embedded in the coded section of a postage label showed whether the

3 mailer had paid the appropriate amount of postage for the item to be

4 mailed, given the item's designated class of mail.

5 Co-defendant Chuanha Hu and Defendant's Shipping Business

6 4.   Defendant and her co-defendant, Chuanhua Hu ("co-defendant

7 Hu"), owned and operated a package shipping business in City of

8 Industry, California.  Defendant's customers included e-commerce and

9 logistics businesses in the United States and the People's Republic

10 of China.

11 5.   Defendant and co-defendant Hu operated their business

12 through multiple business entities, including: (1) AHC International

13 Group, Inc.; (2) AHC Supply Chain Management, Inc.; (3) Art Plus

14 Technology, Inc.; (4) Coco USA Group, Inc.; (5) Coco USA Group

15 International, Inc.; and (6) ZHC Logistics, Inc.

16 6.   Defendant and co-defendant Hu operated their business

17 through one or more warehouses located in City of Industry,

18 California.  Defendant and co-defendant Hu provided their customers

19 with, among other services, postage and shipping services for goods

20 to be delivered within the United States.  Defendant's and co-

21 defendant Hu's warehouses would receive deliveries of packages on a

22 daily basis from China.  Their employees would affix PC Postage

23 shipping labels to these packages and deliver the packages to USPS

24 facilities to be shipped throughout the United States.

25 **B.   THE OBJECT OF THE CONSPIRACY**

26 7.   Beginning no later than in or about November 2019, and

27 continuing until at least in or about May 2023, in Los Angeles

28 County, within the Central District of California, and elsewhere,

defendant and co-defendant Hu knowingly conspired and agreed with each other and with others to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the USPS in the ascertainment and collection of postal revenues, namely, postage fees on packages shipped by defendant and co-defendant Hu within the United States.

C.   **THE MANNER AND MEANS OF THE CONSPIRACY**

8.   The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.   In late 2019, defendant and co-defendant Hu began providing shipping services, including the shipping of packages via U.S. mail, for logistics businesses located in China.  In order to avoid the cost of postage, co-defendant Hu began creating false and counterfeit postage to ship packages.  Specifically, co-defendant Hu began printing duplicate and counterfeit Netstamps – denomination stamps that may be purchased online from third-party vendors and printed onto adhesive paper.

b.   In November 2019, knowing that law enforcement was investigating his use of counterfeit postage, co-defendant Hu fled the United States and moved to China.  After fleeing to China, co-defendant Hu began developing various ways to counterfeit postage and avoid detection.  In coordination with others, co-defendant Hu began developing a computer program for fabricating counterfeit PC postage shipping labels.  Defendant remained in the United States and managed the warehouses used by defendant and co-defendant Hu to ship mail parcels bearing the counterfeit postage printed using the computer program developed by co-defendant Hu and others.

29

1          c.   Beginning in 2020, defendant and co-defendant Hu began

2    affixing, and causing to be affixed, counterfeit PC Postage to mail

3    matter they presented to USPS for delivery.  The counterfeit PC

4    Postage used by defendant and co-defendant Hu took two forms: (1)

5    postage labels with altered human-readable information ("altered

6    postage labels"); and (2) postage labels with IBI copied from

7    previously mailed packages ("duplicated postage labels").

8          d.   Co-defendant Hu and others working at his direction in

9    China would cause the altered postage labels to contain IBI

10   evidencing prepayment of postage that was insufficient to cover the

11   required costs of shipping the item to which the label was affixed.

12   This was accomplished by co-defendant Hu purchasing PC Postage

13   shipping labels from third-party vendors using false weight and

14   shipping distance information.  Co-defendant Hu and others operating

15   at his direction would then alter the human-readable portion of the

16   purchased shipping labels to conform to the actual weight and

17   shipping distance of the subject mail.

18         e.   Co-defendant Hu and others working at his direction

19   would cause the duplicated postage labels to contain IBI copied from

20   PC Postage shipping labels purchased for previous mailings, thereby

21   avoiding the need to pay for the postage shown on the duplicated

22   label.  Co-defendant Hu and others operating at his direction would

23   transpose and cause to be transposed the copied IBI onto fabricated

24   shipping labels designed to mimic the PC Postage shipping labels of

25   third-party postage vendors.

26         f.   Co-defendant Hu and others operating at his direction

27   created web-portals that customers could use to order counterfeit PC

28   Postage.  Customers would enter the relevant information for each

                                    30

package (e.g., recipient name and address, weight) into the web portal, and receive a unique barcode corresponding to each package. Customers would then affix the barcodes to their packages and ship the packages, via airmail, to the warehouse managed by defendant. Defendant and others operating at her direction would then scan the barcodes on the packages into the web-portal created by co-defendant Hu, and thereby access the counterfeit PC postage shipping labels created for each package.  Defendant and others operating at her direction would then print the counterfeit PC postage shipping labels and affix them to each package.  Finally, individuals operating at defendant's direction would deliver the packages bearing the counterfeit PC postage shipping labels to USPS distribution centers for acceptance and shipping.

g.   In May 2020, packages mailed by defendant and co-defendant Hu began to be rejected with greater frequency by USPS distribution centers in Southern California.  To avoid detection by USPS, defendant and co-defendant Hu began shipping packages bearing counterfeit PC postage shipping labels to other warehouse owners in Ohio and Texas.  When one of these warehouse owners was subsequently confronted by USPIS postal inspectors and contacted defendant, defendant advised the warehouse owner not to worry and instructed him to falsely claim that he received the packages from China and that he did not know the subject packages bore counterfeit postage. Defendant and co-defendant Hu subsequently ceased shipping packages to Ohio and Texas.

h.   Between 2020 and 2023, defendant and co-defendant Hu would routinely cause tens of thousands of parcels bearing counterfeit PC postage shipping labels to be delivered to USPS

distribution centers in a single day.  The subject parcels would be stored in large carboard boxes known as "gaylords", typically measuring 48" x 40" X 36."  In order to increase the probability that their packages would be accepted at USPS distribution centers, defendant and co-defendant Hu, and individuals operating at their direction, would frequently arrange the parcels in each gaylord so that the top layer of parcels (i.e. the parcels visible to anyone looking inside the top of the gaylord) were comprised primarily of altered postage rather than duplicated postage.  Defendant and co-defendant Hu employed this strategy based on the shared belief that the altered postage was more likely to pass inspection by USPS personnel than the duplicated postage.  When placing parcels bearing counterfeit PC postage shipping labels in each gaylord, defendant and co-defendant Hu, and others operating at their direction, would ensure that at least 10% of the parcels in each gaylord bore altered postage.

9.    Between January 2020 and May 2023, defendant and co-defendant Hu knowingly mailed and caused to be mailed over 34 million parcels containing counterfeit PC postage shipping labels, causing losses to the USPS of over $150 million.

**D.    OVERT ACTS**

10.    In furtherance of the conspiracy, and to accomplish its object, defendant and co-defendant Hu, together with others operating at their direction, on or about the following dates, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1:    On October 25, 2022, defendant and co-defendant Hu caused to be transported to the USPS LA P&DC a delivery

of approximately 4,779 packages to be shipped via U.S. mail.  This delivery included multiple packages bearing counterfeit USPS Priority Mail postage meter stamps.  The counterfeit USPS Priority Mail postage meter stamps affixed to these packages included both altered postage labels and duplicated postage labels.

Overt Act No. 2:   On May 23, 2023, at a warehouse facility located at 16285 Gale Avenue, City of Industry, California, defendant and co-defendant Hu caused to be printed over 17,000 counterfeit USPS First Class Mail postage stamps, including both altered postage labels and duplicated postage labels.

**E.    Defendant's Forging of Counterfeit Postage on May 24, 2023**

11.   On or about May 24, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly forged and counterfeited, and caused to be forged and counterfeited, a United States Postal Service First Class Mail postage meter stamp on a package addressed from "online seller" of San Bernardino, California, to J.W. of Sterling Heights, Michigan, and knowingly possessed with intent to use such forged and counterfeited postage meter stamp.

\*\*\*

I have read this STATEMENT OF FACTS in support of the plea agreement in its entirety, and signed my initials at the lower right corner of each page to confirm that.  I have had enough time to review and consider this statement of facts, and I have carefully and thoroughly discussed every part of it with my attorney.  I agree that this statement of facts is sufficient to support pleas of guilty to the charges described in the plea agreement and to establish the

Sentencing Guidelines factors set forth in paragraph 18 of the plea agreement.

_____     April 2, 2024
LIJUAN CHEN                           Date

    I am LIJIUAN CHEN's attorney.  I have carefully and thoroughly discussed every part of this statement of facts with my client and agree that it is sufficient to support pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 of the plea agreement.

_____     4/ 2/ 2024
ELLIOT KRIEGER                        Date
Attorney for Defendant Lijuan Chen

34